UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| CARMEN TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 2:14-CV-15-SPM |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, regarding the applications of Plaintiff Carmen Tate ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The Commissioner found Plaintiff entitled to benefits only for a closed period of disability lasting from March 15, 2010 through April 1, 2011. (Tr. 12-27). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision was supported by substantial evidence, I will affirm the Commissioner's decision.

### I. PROCEDURAL BACKGROUND

On March 11, 2010, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since March 24, 2009, due to heart problems, emphysema, and anxiety. (Tr. 144-57,

239). On June 9, 2010, her application was initially denied. (Tr. 89-93). On July 23, 2010, Plaintiff filed a request for hearing before an administrative law judge ("ALJ"). (Tr. 96-97). On May 8, 2012, the ALJ held a hearing. (Tr. 36-68). On the same day, Plaintiff amended her alleged onset date to March 15, 2010. (Tr. 208). On August 13, 2012, the ALJ issued a partially favorable decision, finding that Plaintiff was entitled to a closed period of disability from March 15, 2010, through April 1, 2011. (Tr. 12-27). On October 17, 2012, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 7). On December 17, 2013, the Appeals Council denied the request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the second ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND[1]

Plaintiff's medical records show that she was diagnosed with breast cancer in August 2010 and underwent a left radical mastectomy the same month. (Tr. 467-71, 522-24, 832-34). Between September 22, 2010 and March 28, 2011, Plaintiff underwent several courses of chemotherapy. (Tr. 655-60, 661, 687, 717-91). In 2010 and early 2011, Plaintiff was also diagnosed with chronic obstructive pulmonary disease ("COPD"), borderline glaucoma, pneumonia, gastroesophageal reflux disease ("GERD"), chest pain not otherwise specified, and emphysema. (Tr. 422, 434, 497, 556, 587-88, 601, 607, 928-30). Since her chemotherapy ended, Plaintiff has received treatment for COPD and other lung issues, treatment for GERD, and follow-up evaluation regarding her breast cancer. (Tr. 702-15, 951-76, 990-1108). The record also contains a Medical Source Statement from one of her treating physicians, first filled out in September 2011 and reaffirmed in April 2012. (Tr. 890-93, 1005-08).

---

[1] This is not intended to be a complete summary of Plaintiff's extensive medical record, but rather a brief description of those records most relevant to Plaintiff's appeal.

At the hearing before the ALJ on May 8, 2012, Plaintiff testified that she was 47 years old, was unmarried, and lived with her sister. (Tr. 37-38). She has a high school diploma but received special education services within the regular classroom. (Tr. 39). She smokes half a pack of cigarettes a day. (Tr. 42).

Plaintiff testified that she stopped working in 2010 due to illness and pain. (Tr. 40). She testified that she is tired and gets short of breath when getting up in the morning, getting dressed, and walking. (Tr. 43, 49, 54-55). She attributes the shortness of breath to her cancer rather than to her lung problems. (Tr. 43). She reported that she has severe chest pains every three to four months. (Tr. 58-59). She also reported that she has numbness and pain in her left side, including some numbness that goes down to her fingertips and affects her ability to move and lift with her left arm. (Tr. 50, 52). She can stand for two hours at a time but feels weak after doing so. (Tr. 57).

During a typical day, she babysits for her niece for four hours, which involves watching television with her. (Tr. 41, 56-57). She also gets lunch for her niece. She helps around the house cooking, dusting, and doing dishes, but she does not vacuum because her arms hurt. (Tr. 41-42, 56). She spends a lot of time sitting on the couch, which she does for up to two or four hours at a time. (Tr. 51, 55). She also naps each day for up to three hours. (Tr. 48).

### III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (*citing* 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ found that during the period from March 15, 2010 through April 1, 2011, Plaintiff was under a disability. (Tr. 20). However, the ALJ found that as of April 2, 2011, Plaintiff was no longer under a disability. (Tr. 27). Specifically, as to the period starting April 2, 2011, the ALJ found that Plaintiff had the severe impairments of COPD, emphysema, and left breast cancer (Tr. 16, 20); did not have an

impairment that met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and had the RFC to perform sedentary work, "except the claimant can occasionally push and pull with the non dominant left upper extremity; the claimant can occasionally climb ramps and stairs; the claimant should never climb ladders, ropes, or scaffolds; the claimant can occasionally stoop, kneel, crouch, and crawl; the claimant can occasionally reach overhead with the non dominant left upper extremity; the claimant should avoid concentrated exposure to extreme temperatures, wetness, and humidity; the claimant should avoid moderate exposure to irritants; and the claimant should avoid concentrated exposure to unprotected heights and hazardous machinery." (Tr. 23). The ALJ found that Plaintiff was unable to perform her past relevant work; however, relying on the testimony of a vocational expert, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 26-27). The ALJ therefore found that Plaintiff was not under a disability as of April 2, 2011. (Tr. 27).

## V.    DISCUSSION

Neither party challenges the ALJ's decision that Plaintiff was disabled from March 15, 2010 through April 1, 2011. However, Plaintiff argues that the ALJ made several errors in finding that Plaintiff was not disabled as of April 2, 2011. Specifically, she argues that (1) when finding Plaintiff's disability had an end date, the ALJ improperly failed to apply the "medical improvement standard" set forth in 20 C.F.R. § 404.1594(b)(1); (2) the ALJ failed to give adequate weight to the opinion of Plaintiff's treating physician, Dr. Meesha Gwan-Nulla; (3) the ALJ failed to properly assess the credibility of Plaintiff's subjective complaints; (4) the ALJ failed to give proper weight to the reports of Plaintiff's family members; (5) the ALJ failed to take into account all of the relevant evidence in assessing Plaintiff's RFC; and (6) the ALJ erred

by relying on a hypothetical question posed to the vocational expert that did not include all of Plaintiff's limitations.[2]

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (*quoting Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (*quoting Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

---

[2] In the interest of clarity, the Court considers these arguments in a different order than they were raised in Plaintiff's brief.

**B. The ALJ Did Not Err in Failing to Properly Apply the "Medical Improvement" Standard When Finding Plaintiff's Disability Ended April 1, 2011**

Plaintiff argues that the ALJ erred by failing to properly apply the "medical improvement" standard set forth in in 20 C.F.R. § 404.1594(b) to determine whether Plaintiff's disability continued or ended.[3] This argument is without merit. Although the ALJ couched her decision in terms of "medical improvement" and appears to have attempted to apply that standard in her decision, the Eighth Circuit has held that the "medical improvement" analysis is not required where the ALJ "determine[s] in a single proceeding the fact of [the claimant's] disability, the extent of the disability, and the duration of the disability." *Camp v. Heckler*, 780 F.2d 721, 721-22 (8th Cir. 1986). *See also Eckelstafer v. Barnhart*, 51 F. App'x 185, 186 (8th Cir. 2002) ("In *Camp v. Heckler*, this court rejected the application of the medical-improvement standard in cases such as this one, where the ALJ determined in one proceeding the fact, extent, and duration of a claimant's disability.") (citation omitted); *Anderson v. Colvin*, No. 13-3089, 2014 WL 5528210, at *3 (W.D. Ark. Nov. 3, 2014) (recognizing that the ALJ used the eight-step medical improvement standard in his decision but noting, "it was not necessary to do so, because when in a single proceeding, the fact of disability, the extent of the disability, and the duration of the disability are all determined, the case is not a medical improvement case"; considering whether substantial evidence supported the ALJ's finding that the plaintiff was capable of performing substantial gainful activity as of the date he found the disability ended).

---

[3] 20 C.F.R. § 404.1594(a) provides, in part, "[I]f you are entitled to disability benefits, your continued entitlement to such benefits must be reviewed periodically. . . . We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work. . . ." Section 404.1594(b) provides further details regarding application of the "medical improvement" standard.

Here, the ALJ determined in a single proceeding that Plaintiff was disabled and that the disability ended April 1, 2011. Thus, she was not required to apply the medical improvement analysis, and the Court's task is to determine whether substantial evidence supports her finding that Plaintiff was not under a disability as of April 2, 2011.

## C. The ALJ's Assessment of Dr. Gwan-Nulla's Opinion is Supported by Substantial Evidence

On September 16, 2011, one of Plaintiff's treating physicians, Dr. Meesha Gwan-Nulla, completed a Medical Source Statement form in which she opined that Plaintiff could lift less than ten pounds occasionally, could stand and/or walk less than two hours in an eight-hour workday, could sit for two to three hours at a time, and had limited pushing and pulling ability in her upper extremities. On the form, next to the standing and walking limitation, she indicated that Plaintiff "feels dizzy." She also opined that due to Plaintiff's breast cancer and COPD, Plaintiff could never climb ramps or stairs and could occasionally balance, kneel, crouch, crawl, and stoop. She also opined that Plaintiff had no manipulative, visual, or communicative limitations. Finally, she found that Plaintiff was "limited" in her ability to deal with certain environmental factors: temperature extremes, dust, humidity/wetness, hazards and "fumes, odors, chemicals, gases." Dr. Gwan-Nulla indicated that she agreed with Plaintiff's disability onset date of March 24, 2009. (Tr. 890-93). On April 12, 2012, Dr. Gwan-Nulla signed a copy of her September 2011 opinion and wrote, "No additional comments." (Tr. 1005-08).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000); 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2). Nonetheless, an ALJ may give lesser weight to a treating physician's opinion if this standard is not satisfied. Where it is not, this "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Social Security Ruling 96-2p, 1996 WL 374118, at *4 (July 2, 1996). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." *Id.* These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, the level of specialization of the source, and other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Dr. Gwan-Nulla treated Plaintiff between August 3, 2011 and approximately April 4, 2012, and the ALJ properly recognized that she was a treating source. With respect to the period beginning April 1, 2011, the ALJ gave her opinion "some weight" but did not give controlling weight to all of her conclusions. (Tr. 25). Specifically, he found that some of her opinions regarding Plaintiff's ability to sit, stand, walk, lift, and climb stairs and ramps were not supported by objective testing, clinical signs, or treatment sought by or offered to Plaintiff and were inconsistent with Plaintiff's own descriptions of her activities. (Tr. 25). That decision was supported by substantial evidence in the record.

First, the treatment notes from Dr. Gwan-Nulla's five visits with Plaintiff contain no medical support for any of the limitations she imposed. (Tr. 1042-43, 1044, 1046-47, 1058-59, 1065-67). There is no indication in those notes that Plaintiff complained of any pain, weakness, fatigue, shortness of breath, mobility problems, or other symptoms that would support Dr. Gwan-Nulla's limitations on Plaintiff's ability to stand, sit, walk, lift, or climb stairs. Although Dr. Gwan-Nulla indicated in her opinion that Plaintiff "feels dizzy," which limits her ability to standing and/or walk, the only mention of dizziness in her treatment notes is an August 2011 note that Plaintiff had had "dizziness in the past." (Tr. 1043). Indeed, the record indicates that the only symptoms Plaintiff complained of to Dr. Gwan-Nulla were related to sinus congestion in October 2011, hot flashes in January 2012, and gastroesophageal reflux in April 2012. (Tr. 1065-66); otherwise, Plaintiff reported "doing well" (Tr. 1042, 1044). Dr. Gwan-Nulla conducted a physical examination at each visit, and her physical findings at each of these visits were normal. (Tr. 1043-44, 1046, 1058, 1066). Dr. Gwan-Nulla repeatedly diagnosed Plaintiff as having stable COPD, prescribed medication for the COPD, and recommended that Plaintiff quit smoking, but Dr. Gwan-Nulla did not identify any symptoms or functional limitations associated with Plaintiff's COPD. There is also no indication Dr. Gwan-Nulla ever observed Plaintiff having any difficulty with mobility or any abnormalities in gait or posture. The fact that Dr. Gwan-Nulla's opinions contain limitations not reflected in her treatment notes supports the ALJ's decision to discount those opinions. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (holding the ALJ did not err in giving minimal weight to the report of a treating physician where the opinion was conclusory and contained significant limitations not reflected in his treatment notes); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone" and "were never

mentioned in [the physician's] numerous records of treatment . . . nor [were] they supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted").

Second, records from Plaintiff's other treatment providers in the period after April 2011 also provide little or no support for Dr. Gwan-Nulla's opinions. Plaintiff saw her oncologist for follow-up several times in 2011 following the conclusion of her chemotherapy in early 2011. (Tr. 702-08, 710-15, 1032-35, 1038-40, 1051-52). Plaintiff reported in April 2011 that she had "a bit of tingling in the tips of her fingers," and she reported in July 2011 that she had had some trouble with asthma since the start of a heat wave and since starting to smoke a bit more. (Tr. 702, 710, 1032). Other than those complaints, however, Plaintiff generally indicated that she was "doing well," had "no constitutional complaints," and was "not feeling poorly." (Tr. 702, 710, 1032, 1038, 1051). Physical examinations were generally normal. (Tr. 703, 711-12, 1033, 1038-39, 1051-52). She frequently noted that her biggest concern was her financial situation. (Tr. 702, 710, 1032, 1038).

In addition, Plaintiff's visits to her other doctors for treatment of her asthma, COPD, breast cancer, and other conditions provide little support for Dr. Gwan-Nulla's opinions. These notes indicate that Plaintiff sometimes had chest pain, coughing, cold symptoms, shortness of breath, and/or fatigue, and that in September 2011 she reported dizziness associated with the use of one of her inhalers. (Tr. 990-91, 993-96, 1000-03, 1010, 1071-74, 1075-76, 1099). However, these notes do not support the standing, walking, sitting, lifting, or climbing restrictions in Dr. Gwan-Nulla's opinions. Plaintiff stopped reporting dizziness after her doctor changed her inhaler prescription in September 2011, and at visits in 2012 she specifically denied having dizziness. (Tr. 991, 998, 1061, 1106). In September 2011, her doctor noted that her COPD was "mild to

moderate," that it "has been occurring in a decreasing pattern for years" and that "the course has been gradually improving." (Tr. 993). At visits in July 2011 and January 2012, Plaintiff specifically denied having difficulty breathing after exertion. (Tr. 991, 998). In late February 2012, Plaintiff went to the hospital for chest pain, but notes from that visit indicate that she had stopped using her medications for more than a month. (Tr. 955). In April 2012, her doctor noted that her COPD was "well controlled" on her medication. (Tr. 1066). In addition, at a May 2012 appointment, she rated her level of fatigue at "1/4." (Tr. 1099). Her posture and gait were consistently noted to be normal; her review of systems with regard to musculoskeletal examinations was consistently unremarkable; and her chest, lung, and cardiovascular examinations were generally normal when she was on her medication. (Tr. 991, 995, 998-99, 1062, 1077, 1106-07). She did not complain of weakness or mobility problems, and her doctors did not suggest any that she had any mobility or activity restrictions during the relevant time period.

Third, the ALJ properly noted that Dr. Gwan-Nulla's opinion regarding Plaintiff's limited ability to stand and sit were inconsistent with Plaintiff's own accounts of her activities. (Tr. 25). *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (ALJ properly discounted treating physician's opinion where claimant testified that she regularly engaged in activities that exceeded opined limitations). Contrary to Dr. Gwan-Nulla's opinion that Plaintiff could stand or walk for less than two hours in an eight-hour workday, Plaintiff testified that she could stand for two hours at a time. (Tr. 50, 57). In addition, contrary to Dr. Gwan-Nulla's opinion that Plaintiff could sit for only two to three hours at a time, Plaintiff described her daily routine as involving sitting down for "four hours." (Tr. 55).

Finally, the Court notes that Dr. Gwan-Nulla's opinion was given on a check-box form and she offered no explanation for most of her conclusions. Indeed she left blank most of the sections of the form on which she was asked to give such explanations. The conclusory nature of Dr. Gwan-Nulla's opinion entitles it to less weight. *See Anderson*, 696 F.3d at 794 ("[W]e have recognized that a conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration.") (quotation marks omitted).

## D. The ALJ Properly Evaluated the Credibility of Plaintiff's Subjective Complaints

When evaluating the credibility of a plaintiff's subjective complaints, the ALJ must consider several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "'An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints.'" *Moore*, 572 F.3d at 524 (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)). However, the ALJ need not explicitly discuss each factor. *Id.* (citing *Goff*, 421 F.3d at 791). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (quotation marks and citation omitted).

Plaintiff testified that she has extreme fatigue and shortness of breath that require her to spend most of the day sitting, lying down, or sleeping, and that she has pain and numbness in her left side. The ALJ found these complaints only partially credible and found that Plaintiff was

capable of performing sedentary work with some additional restrictions. (Tr. 23-26). In doing so, the ALJ conducted a proper credibility analysis in accordance with the factors discussed above.

First, the ALJ properly considered Plaintiff's accounts of her daily activities, including the fact that Plaintiff was able to help with household chores such as washing dishes, preparing meals, and babysitting her niece. (Tr. 25, 56-58). While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of extreme fatigue and shortness of breath that would prevent her from doing even sedentary work, and they may be considered in judging the credibility of her complaints. *See Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (finding that in assessing the credibility of complaints of tiredness and mental difficulties, the ALJ properly considered the fact that the claimant took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals, did housework, shopped for groceries, and had no difficulty handling money).

Second, as discussed above with respect to Dr. Gwan-Nulla's opinion, the ALJ properly considered the fact that the objective and other medical evidence from after April 1, 2011 did not support her claims of disabling fatigue and shortness of breath. (Tr. 23-25). This includes objective testing showing that her breast cancer did not recur after April 1, 2011, evidence that her physical examinations were generally normal when she was on medication; evidence that Plaintiff frequently reported doing well and having no constitutional complaints; evidence that

Plaintiff sometimes denied fatigue and difficulty breathing; and evidence that Plaintiff's COPD improved with treatment. These were all proper factors in the credibility analysis. *See Goff*, 421 F.3d at 792 (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints); *Frederickson v. Barnhart*, 359 F.3d 972, 977 n.2 (8th Cir. 2004) (holding that the fact that the plaintiff had not complained of severe pain to his treating physicians of symptoms undermined the credibility of his reports of those symptoms); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability.") (citing *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)); *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (finding the ALJ's discussion of how the claimant's symptoms "improved with treatment" a proper factor in discounting the claimant's credibility).

Fourth, the ALJ noted that Plaintiff continued to smoke throughout the relevant period, despite her doctors' repeated recommendations that she stop doing so. (Tr. 24, 955, 999, 1044, 1046, 1058, 1067, 1074, 1077). A claimant's failure to stop smoking despite recommendations to do so may weigh against the claimant's credibility. *See Wheeler v. Apfel*, 224 F.3d 891, 895 (ALJ properly considered the claimant's continued smoking despite directions to quit in assessing the credibility of her asthma-related complaints); *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (noting that an ALJ may properly consider noncompliance with a treating physician's directions, including a failure to quit smoking, in the credibility analysis).

In sum, the ALJ considered several of the relevant credibility factors, and her decision to partially discount the credibility of Plaintiff's subjective complaints is supported by substantial evidence in the record. Therefore, the Court will defer to the ALJ's credibility determination. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion

for the ALJ's who is in a better position to gauge credibility and resolve conflicts in evidence."); *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011); *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008).

### E. The ALJ Properly Evaluated the Third-Party Reports From Plaintiff's Family Members

Plaintiff argues that the ALJ erred by failing to give proper weight to the third-party reports of Plaintiff's family members. In April 2010, Plaintiff's niece filled out a Function Report indicating that Plaintiff had fatigue and shortness of breath and had significant difficulty with several activities, including standing, walking, climbing stairs, squatting, bending, seeing, and completing tasks. (Tr. 286-93). In August 2010, Plaintiff's aunt completed a form indicating that Plaintiff could not walk more than two feet without getting out of breath and needing to sit down, had panic attacks, could stand for only half an hour, and had difficulties sitting, lifting, and performing household chores. (Tr. 308-10). The ALJ expressly discussed these reports in his opinion and gave them "some weight" as to the period before April 1, 2011. (Tr. 19). However, as to the period after April 1, 2011, he did not give significant weight because they had been completed in 2010 and because they were not supported by the medical evidence after that date. (Tr. 25-26). The ALJ also properly pointed out that Plaintiff's family members were not medically trained to make exacting observations and that they could not be considered disinterested third parties. (Tr. 25-26). For these reasons and the reasons discussed above with respect to the ALJ's evaluation of Plaintiff's own subjective complaints, the decision to give no significant weight to these reports is supported by substantial evidence in the record.

### F. The ALJ's RFC Determination Is Supported by Substantial Evidence

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not adequately take into consideration Plaintiff's testimony regarding her symptoms; the

medical signs and findings in the record regarding Plaintiff's pain, fatigue, and other symptoms; and the environmental limitations in Dr. Gwan-Nulla's opinion.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Plaintiff suggests that the ALJ failed to adequately consider her testimony and the medical evidence regarding her fatigue, shortness of breath, cough, chest pain, and other symptoms. The Court disagrees. The ALJ's decision includes a detailed discussion of Plaintiff's testimony regarding her limitations and a proper analysis of why he found her testimony only partially credible. The ALJ's decision also includes a detailed discussion of the medical records during the relevant time frame, including both positive and negative reports and objective findings regarding Plaintiff's lung condition and general condition. (Tr. 24-25). Although the ALJ did not expressly mention every single report and finding in Plaintiff's medical record, she was not required to do so. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (noting that "an ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Here, it is clear that the ALJ considered the relevant evidence in assessing Plaintiff's RFC.

Moreover, the medical evidence does not support limitations more severe than those articulated in the RFC. As discussed at length above, Plaintiff frequently reported to her doctors that she was doing well or had no constitutional symptoms, her physical examinations were

typically normal, her doctors did not indicate that she had significant fatigue or mobility problems, and her doctors described her COPD as "mild to moderate," "improving," and "well controlled" when she was on medication. These findings are consistent with the ALJ's finding that Plaintiff could perform sedentary work with additional postural and environmental limitations. *Cf. Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (noting that a limitation to sedentary work "in itself is a significant limitation").

Plaintiff also argues that the ALJ erred by not including in the RFC all of the specific environmental limitations described in Dr. Gwan-Nulla's medical source statements. As stated above, Dr. Gwan-Nulla opined that Plaintiff was "limited" in her ability to deal with temperature extremes, dust, humidity/wetness, hazards, fumes, odors, chemicals, and gases. The Court agrees with the Commissioner that the RFC accounts for the limitations in Dr. Gwan-Nulla's opinion. Dr. Gwan-Nulla did not specify that Plaintiff must avoid *any* exposure to the environmental factors listed on the form, but only that she was "limited" in her ability to be exposed to those factors. The statements in the RFC that Plaintiff "should avoid concentrated exposure to extreme temperatures, wetness, and humidity" and "should avoid moderate exposure to irritants" (which would include dust, fumes, odors, chemicals, and gases) adequately reflect Dr. Gwan-Nulla's opinion. Moreover, the record as a whole does not suggest that Plaintiff needs to avoid all exposure to all pulmonary irritants. As the ALJ noted, Plaintiff continued to smoke cigarettes throughout the relevant period. (Tr. 24, 1077, 1107). Despite this regular exposure to pulmonary irritants, the record shows that her COPD was only "mild to moderate" and "well controlled" by her medication. (Tr. 25, 993, 1066). The ALJ's implicit finding that Plaintiff could tolerate some exposure to irritants is supported by substantial evidence.

## G. The ALJ Relied on a Proper Hypothetical Question Posed to the Vocational Expert

Finally, Plaintiff argues that the hypothetical question the ALJ posed to the vocational expert did not adequately include all of Plaintiff's limitations. As discussed above, at Step Five, the Commissioner bears the burden of establishing that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Pearsall*, 274 F.3d at 1219. "'Testimony from a vocational expert is substantial evidence [in support of a finding at Step Five] only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011) (quoting *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007)).

Plaintiff first alleges that the question posed to the vocational expert (the "VE") did not include Plaintiff's limited ability to be exposed to irritants such as dust, gas, and fumes. She argues that this is particularly significant because the VE testified that there was "some exposure" to dust in the jobs she identified and that "if an individual had to avoid all exposure to irritants," then she could not do those jobs. (Tr. 65). The Court finds this argument without merit. As discussed above, Dr. Gwan-Nulla did not find that Plaintiff must avoid "all" exposure to irritants, but only that she was "limited" in her ability to be exposed to such irritants, and the ALJ adequately accommodated this limitation by finding in the RFC that Plaintiff should avoid "moderate exposure" to irritants. Consistent with that RFC, the ALJ posed a hypothetical question to the VE describing an individual who must "avoid[] even moderate exposure to irritants." In response, the VE testified that such an individual could perform jobs such as hand assembler and machine worker. (Tr. 62-64). Nothing in the VE's testimony indicates that the jobs she identified could not be performed by someone with Plaintiff's RFC.

Second, Plaintiff alleges that the ALJ erred by including in the hypothetical question to the VE that Plaintiff had a "high school education" without specifying that Plaintiff had received special education services or specifying that her school records contained an IQ score of 65 from 1977. Again, the Court finds no merit in this argument. Plaintiff did have a high school education. She did not allege in her application or her testimony that she was significantly limited by her cognitive abilities, nor does anything in her extensive medical record suggest that she was so limited. The ALJ noted that Plaintiff's representative had requested that the ALJ order IQ testing but that the ALJ had found it not warranted in light of the record. (Tr. 22).

Because the hypothetical question posed to the VE adequately captured the consequences of Plaintiff's impairments that were supported by the record, the response to that hypothetical question constitutes substantial evidence to support the ALJ's finding at Step Five. *See Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008) (finding substantial evidence supporting the ALJ's conclusion at Step Five where the ALJ's hypothetical posed to the VE contained all of the concrete consequences of the plaintiff's physical deficiencies during the relevant time period).

## VI.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of March, 2015.